I'm going to proceed to the fifth case of the day, Franklin v. Parking Revenue Recovery. Mr. Adler.  May it please the court. The plaintiffs claim that the defendants violated the FDCPA by sending them each a collection letter demanding payment of two charges, a $1.50 daily parking fee combined with a $45 add-on, we'll call it, that the plaintiff's claim was neither authorized by the contract or expressly permitted by law. The issue on appeal here is whether either one of these charges meets the test for a debt covered by the FDCPA. Now, to be a debt, an obligation need only meet three elements. One, has to be an obligation or alleged obligation to pay money. Two, it has to arise from a transaction. And three, the subject of the transaction has to be for a personal, family, or household purpose. The goods and services need to be for a consumer purpose, basically. There's no dispute that either one of these charges meet, there's no dispute that the two charges meet two of the elements for a test for a debt. Obviously, there are obligations or alleged obligations to pay money, and the purpose of the subject matter of the transaction was for personal parking services, so that meets the consumer purpose test. So the only question is, do these charges arise from a transaction? In Bass v. Stolper, this court ruled that a transaction, the term transaction, although not defined in the FDCPA, is a very broad term. And it includes virtually any consensual business dealing between two parties. And the allegedly unpaid $1.50 parking charge at issue here squarely meets this test because the lot operator here offered parking services to the general public in an unintended lot for the price of $1.50 per day. And my clients, the plaintiffs, accepted that offer by pulling into the lot, parking in a numbered space, and at that point, they became obligated to pay the $1.50 daily parking fee. So you have an offer, acceptance, creating an obligation to pay, consensual transaction. So accordingly, the defendant's attempt to collect that $1.50 parking fee was an attempt to collect a debt as defined by the FDCPA. Now, the district court, in concluding otherwise, we believe erred by putting limits on the definition of the term transaction that cannot be found anywhere in the statute. And in some instances, actually contradict the statutory language. First, the district court found that the failure to pay, the alleged failure to pay the parking charge, means that there's no transaction. The court concluded there's no transaction if you fail to pay the charge. Counsel, you're sort of leaving out a substantial component of this fee, which was a nonpayment penalty of $45. The case is about the $1.50 parking fee plus the penalty, the $45 penalty, because what your clients were assessed is $46.50, right? Well, $46.50 is what the number given in the collection letter, but it's two separate charges. I get that, but the penalty seemed to be the tail that was wagging this dog, if you will. And got the district court focused on characterizing this as a fine rather than a transaction. And that's what seems to me the key question here, and that's what brought the Gully case into play. And so we need to decide how to properly characterize this charge, which contains both components. Well, there's a $1.50 charge that arose from a transaction. You have to look at both charges separately. If either one of these charges meets the test for a debt, then the collection letter seeking both of them together is an attempt to collect a debt. However, both charges do meet the test for a debt. The $1.50, for the reason I just explained, is an obligation incurred as a result of using parking services. The $45 charge, though, also meets the test for a debt by itself, but for the parking transaction it would not have arisen. And I'm focusing on the case of Shula v. Louent, decided by this court, where the court found that court costs, as a result of litigation over a medical services obligation in that case, the court costs themselves met the test for debt, even though they were not the focus of the transaction, if you will, because they arose as a result of the transaction. Just like the court costs in Shula v. Louent, here the $45 charge arose as a result of my clients using this parking lot and using the services that were offered to them by the lot operator. In fact, under the defendant's theory of the case, the defendant's claim that the $45 is actually owed as a part of the contract. It's like some sort of late charge. So if it's part of the contract arising from the underlying obligation to begin with, then the $45 must necessarily arise from this consumer transaction as well. And in that sense, it meets the test for debt, too. So that's why both charges meet the test for a debt. Turning back to the district court's reasoning, however, the district court believed that, on one hand, non-payment alone demonstrated that this wasn't a transaction. Stating the acceptance of the parking service without paying the required fee does not create a consensual transaction because the court believed that no creditor would do business with somebody if they knew they weren't going to pay. But by that logic, then, no unpaid debt would ever be covered by the FDCPA, and it would create a hole in the statute you could drive a truck through, because in every single case, the debt collector would claim, well, there's no debt here because the creditor, no way the creditor would have done business with you if they knew you weren't going to pay. Right, that doesn't hold up. But it seemed to me that the real basis of the district court's decision was the analogy to parking fees and fines for parking on a public street. Sure. Plugging a meter. There was a lot of discussion about plugging the meter. Sure, plugging the meter. Okay, let's talk about that. The plugging the meter example doesn't fly. It's not analogous to what happened here, because in that case, and let's focus on the Gully case, even though it wasn't a parking meter, it was a real estate fine. Municipal fines. Municipal fine, because the guy was running, he had a vacant building, or allegedly had a vacant building, and he wasn't employing watchmen, and there was all these statutes requiring him to do all this stuff. Right. The charge there was for breaking the law. There was no transaction there where there was a sale of goods and services that he failed to pay for. It's just, you own a chunk of property, it violates the law, and we're sort of fining you for breaking the law. Now, let's switch to the parking meter context again. There, when you have an expired meter, the fine you get is for that expired meter. Again, breaking the law. It's not for failing to pay for the parking services. You get a spot in downtown Chicago for five hours, and you stay for five hours and one minute, and the meter operator happens to be there. They don't come and give you a fine based on that one minute. They give you the standard fine provided by the municipal code for the expired meter. They don't come back and say, well, you owe us an additional amount for that one minute of time that you were over. They don't care how long you've been there. Well, right, and parking regulations for parking on public streets is a matter of municipal police power anyway, right? And those regulations are set by ordinance or statute or a combination of ordinance and statutes, and so it's easier to see why that doesn't meet the definition of consumer transaction under the FDCPA. That's not what we've got going on here. We have a private parking franchise operating on public property, right? Exactly. Exactly. So we have private agreement, private obligation. We'll do a private entity. Actually, even if there was a public entity doing business with the people, it would still be a consumer transaction. The government sells you goods and services, and the obligation arises from that. It's still owed. It doesn't matter that there's a government actor involved. Sure. If Metro was running this franchise, it would still be a debt. Would it be a debt because it would be Metro acting as a property owner, not as a regulator? Absolutely. If the court has no further questions, I'd like to reserve the rest of my time for rebuttal. Sure. Thank you. Ms. Barhorst? May it please the court, counsel, I'm Stacey Barhorst. I represent the defendant, Parking Revenue Recovery Services, in this case. To me, the question in this case is one that Your Honor mentioned, but it's akin to the philosophical thought experiment asking, if a tree falls in the forest and no one is around to hear it, does it make a sound? And put in the context of this case, if an obligation is only hypothetical until a parking violation is placed on the windshield of a parker, can it be a consensual transaction? In what sense is the obligation hypothetical? The testimony in this case shows that the lot checker only comes three or four days a week, or two or three days a week, excuse me. So if I park, I don't pay, and it happens to be that day when the lot checker doesn't come, or I park after the lot checker has come, there is an obligation there. I didn't pay for parking. But it's hypothetical because unless or until. It's not hypothetical, counsel. It's unenforceable. It's not unenforceable either. It's fully enforceable. Unless or until. If the parking franchise or franchisee, CPS here, neglects to put the violation sticker or ticket or whatever it's called on the windshield, it's foregoing recovery, but it doesn't make the transaction hypothetical. The transaction isn't hypothetical, but the liability is. I mean, certainly how. It's not hypothetical. It's just unrealized or unenforced by the holder of the right to enforce the obligation. Well, let me ask you this question. If the obligation to pay does not arise from a contractual transaction, where does it arise from? It arises from the ability contractually granted by a municipal entity, METRA, to Central Parking Services and, in fact, required by METRA, that Central Parking Services enforce parking fines, and they are called fines within the contract. That's irrelevant. What they're called doesn't make any difference. It depends on what its function, purpose, reality is. And in reality, this is a fee for parking services and a late fee or a nonpayment fee that's assessed in addition to the standard fee if the parker doesn't pay. And that's a contractual transaction between the parker and the franchisee, CPS, that has a contract with METRA to run the parking lot. However, the failure to park is not the only reason why that violation fee could be imposed, and that's acknowledged by the appellants in their deposition testimony. One of the issues in this case is appellants' contention that there were no signs present at the lot informing them. That all goes to the merits. I'm talking about how to characterize the $1.50 fee and the $45 nonpayment fee. I don't believe that they can be separated. Even not separating them, considering them together as a unit, if the obligation arises as a matter of contract law, it certainly doesn't arise as a matter of tort law, right? And it does not arise as a matter of municipal ordinance. The obligation has to arise as a matter of contract law. So if the obligation to pay is contractual, it's a consumer transaction that falls under the FDCPA. But METRA is a municipality, and it does have police power. But it didn't adopt the fee and the nonpayment fee as a part of its police power to regulate the railroad tracks, for example. And it certainly doesn't have police power over the parking lot. It has police power over the railroad tracks. Over the parking lot, it has the rights of a property owner, like a private property owner. And the fact that it's a public entity doesn't make any difference. It's acting as a property owner when it licenses or authorizes this franchisee, CPS, to run the parking lot. And in fact, in the contract, METRA indicates that all disputes between patron and operator, meaning between operator CPS, you, your client, or the debt collector, your client as the debt collector is working for CPS, and the patron, meaning the parker, shall be handled as a matter of contract. That's on page 15 of the contract between METRA and CPS. Well, Your Honor, if it's a matter of contract, then it's a consumer transaction, it's a debt, you lose. Well, again, my issue is that if there is a contract, in this case, the contract allowed my client to impose this fine, so it doesn't necessarily allow your client to collect it, but you have to comply with the Fair Debt Collection Practices Act when you collect it. Well, it's about practices, not your entitlement to collect the debt. Right, but the nature of the transaction, the issuance of the fine is not consensual. The appellants have admitted in their testimony they didn't negotiate for that. First of all, it's not a fine. A fine is something that's issued by a municipal authority for noncompliance with a legal obligation set by public law. The fact that this contract between METRA and CPS at certain points calls it a fine isn't controlling here. It depends on what it is in actuality. Well, I'm not saying that it's controlling. However, under that rationale, then how can any private operator of any lot in the city penalize anyone for parking in a fire lane or doing something else? Fire lane parking, that's a matter of municipal code. That's different. I'm talking about as property owner or here the franchisee operating the lot on behalf of the property owner. They can enforce the parking fees plus the nonpayment charges as a matter of contract because that's the only source of a legal obligation to pay. It can't be tort. Or if it is tort, you're not going to take stuff laws to court for trespass, right? I think that the property owner has the right to impose, control what's going on in their property. Absolutely. No one's questioning that. It's a matter of how it's properly characterized as a debt or a municipal fine. If it's not a municipal fine, then it's got to be a contract debt, and it's in for purposes of the FDCPA. But in Gully, it was not just that municipal law that was referenced. Oh, sure. It's breaking or some other rule. Law promulgated by a municipal authority pursuant to its police powers. Breaking the law or some other rule is the quote, and so that's where we're coming from. Consider the context municipal law pursuant to police power. Well. Not the municipality acting as a property owner selling goods and services like parking. Well, then if this is a contract, then there are no genuine issues of material fact that this was properly issued. Then you go back and you litigate that. That goes to the merits of the claim. We're here on this discrete issue about whether this is a debt. The merits have not been litigated yet. Actually, that's not. We raised in our brief and in our summary judgment the alternate issue. It's mentioned in Appellant's brief that if the court finds that it is a debt, then we still don't have liability because we are not attempting to collect a fee that is not available by law or authorized by the underlying contract. So the underlying contract actually is relevant to this case. Right, but there's all different dimensions of this claim. There's claims about the improper content of the notice and other issues. I mean, this is not just about whether you can collect the $45 or whether that's more than what the contract between CPS and METRA permitted. It's about the manner in which the collection was being undertaken and the representations that were made in the Dunning letter. Right. And none of that has been litigated as I understand it. All of that has been litigated. It was all litigated in the summary judgment. It was referenced in both Appellant's brief and responded to in my brief. That was litigated fully in summary judgment. So whether I argued that it's a fine, a penalty, not a consensual transaction, and I also argued that if the court did find that it was a contractual obligation, that the contract underlying the debt did allow the imposition of the fee, a finite issue. Right, but there's more to the claim than that. That's the point I just made. Right. There are other claims. However, the in writing claim is one of them. The collection of a fee not authorized by the agreement underlying the debt or authorized by existing law, or I believe the third one is the misrepresentation of the amount owed or the misrepresentation of the use of the in writing requirement. Again, those two issues are the only two other issues, and they were litigated in the summary judgment. Well, on the issue of whether the $45 nonpayment charge was authorized, the contract only allows $25. METRA ratified that. METRA knew about there was a complaint to METRA. The METRA and CPS discussed that. And METRA decided to not force CPS to void or otherwise rescind those tickets, and in the future they would write the tickets at the $26.50. My client has no involvement in the imposition of that fee. My client simply is given the information as to the vehicle, license plate number, the make model, color of the car, and the fine that was imposed, for example, in these cases, no payment in box, and the amount of that fine, which in these cases was $46.50. My client does not add any additional fees. My client doesn't make any determination and has no discretion with regard to the amount of the fee or how it's sent over by CPS. I see that my time is over. Thank you. Thank you, Mr. Farhars. Mr. Hadlicky? Very briefly, I just want to emphasize the two charges can be separated. If the court determines that the $1.50 itself arises from a transaction, as we believe it should, for the reasons I stated, the court can still conclude. At that point, the FDCPA applies, and the district court on remand then could still determine that the $45, and they attempt to collect it, violates the FDCPA, even if the $45 itself does not meet the test for a debt, because Section 1692F1 states that the debt collector is not allowed to attempt to collect any charge, fee, or what have you, incidental to the underlying obligation, the $1.50, unless it's expressly authorized by the contract or by law, which it was not for the reasons we stated in our briefs. In terms of whether the merits were litigated, they are brief, but the district court did not decide those issues, and so those issues aren't before this court. But they're before the court in the briefs, but there's no decision for the court to review from the district court on those issues. Unless this court has further questions, I have nothing additional to add. And we'd ask respectfully that this court reverse the district court's decision. Thank you, Mr. Hadlicky. Thank you. Thank you, Mr. Farhars. Case is taken under advisement.